**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IVAN KIMBROUGH, :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:07-CV-1517-RWS
U.S. GOVERNMENT, :
:
    Defendant. :

## **ORDER**

On May 27, 2008, Defendant filed a Motion for Dismissal or, Alternatively, Summary Judgment [19]. On June 16, 2008, Plaintiff filed a Motion for Extension of Time to Respond [21], and on June 19, 2008, the Court entered an Order [22] granting the motion. On July 29, 2008, Plaintiff filed a Motion for Second Extension of Time [23]. On that same date, Plaintiff filed a response to Defendant's Statement of Undisputed Facts [24].

On August 22, 2008, the Court entered an Order [27] denying Plaintiff's Motion for Second Extension and ordering Plaintiff to file a response to Defendant's Motion within five (5) days of the entry of the Order. Defendant was warned: "Failure to file such a response shall cause the Motion to be deemed unopposed." (August 22 Order [27] at 2.) Plaintiff has not filed a

response to the Motion, and therefore, the Motion to Dismiss or, Alternatively, for Summary Judgment is presently before the Court, unopposed.

## Factual Background[1]

Plaintiff was first diagnosed with diabetes by physicians at the Veterans Administration Medical Center, Atlanta, Georgia ("VAMC") in 1998. Plaintiff has received ongoing treatment for his diabetes only from the VAMC. When first diagnosed with diabetes, Plaintiff was educated by VAMC staff on the importance of adhering to a strict diet and maintaining controlled blood glucose levels and proper weight control to prevent diabetic complications. Plaintiff received further information in 2002 from VAMC staff about the importance of proper foot care to prevent diabetic complications resulting from infection.

Plaintiff was given a glucose meter by VAMC staff to monitor his blood glucose levels and understood that a normal fasting blood glucose reading should range between 110-120 mg/dL, although his actual readings ranged from 130-270 mg/dL during his self-tests. Plaintiff states that he was instructed by

---

[1] The Factual Background is taken from Defendant's Statement of Undisputed Material Facts. Defendant's Statement of Facts is deemed admitted due to Plaintiff's failure to refute any contested facts with specific citations to evidence. See L.R. 56.1B.(2)a(2)(i).

2

VAMC staff to check his blood glucose readings regularly, at least once every other day.

On or about August 15, 2002, Plaintiff first reported to the VAMC with an ulcer on his right foot for which he received treatment from the VAMC Primary Care Department until August 29, 2002, when he was referred to the Podiatry Department for continued treatment. The foot ulcer was on the bottom of Plaintiff's right foot and measured 1.3 cm (0.5 inches) long. Dr. El-Kashab of the VAMC Podiatry Department treated Plaintiff's foot ulcer by, among other things, prescribing Genramicin, an antibiotic medication, and Betadine, an antiseptic medication, giving Plaintiff a supply of fresh bandages and an applicator, and advising Plaintiff to wash the wound and apply the medications and bandages three times per day.

Plaintiff was told by VAMC staff that his foot ulcer could be related to uncontrolled blood glucose levels. Plaintiff states that VAMC staff instructed him to check the foot every day, clean the foot by washing, drying and bandaging it three times each day, and return to the emergency room if he encountered any problems with his foot. He was also told to continue to check his blood sugars regularly. Between August 2002 and August 2003, Plaintiff received from VAMC Prosthetics Department, two devices to prevent further

3

injury to the ulcer. One of the devices was an appliance fitted to one of his own shoes by Dr. Frenchman, either during August or September 2002, and the other was a prosthetic device, which Plaintiff refers to as a "cam walker," which is worn on the foot with supports which extended up the calf and lower leg. Plaintiff does not dispute VAMC medical records which indicate that on Sept. 5, 2002 he was offered but declined to use the "cam walker."

Plaintiff was employed by Lucent Technologies ("Lucent") as a supply chain product manager for eight (8) years, terminating in November 2003 as the result of a reduction in force. From the time he was prescribed his prosthetic shoe until his employment at Lucent ended, Plaintiff did not wear his prosthetic shoe at work; he only wore it at home or in his car.

Plaintiff also was provided with a pair of crutches and told to remain non-weight bearing on his right foot to reduce the possibility of infection. In September 2002, Plaintiff had been prescribed and was taking Cipro, an antibiotic medication used to prevent or reduce the development of bacterial infections. Plaintiff, at times, failed to take his regular dosage of Cipro and attempted to compensate for such failures by doubling the dosages he took later. Dr. El-Kashab advised Plaintiff that he was taking the Cipro incorrectly.

4

In September 2002, VAMC staff instructed Plaintiff to take his dosages of Cipro as prescribed and warned him of the inadvisability of doubling the dosages. Also, he was again advised to discontinue swimming. On September 5, 2002, Plaintiff was advised by VAMC staff to remain non-weight bearing on his injured foot and not get the ulcer wet. In spite of being advised not to get the ulcer wet, Plaintiff told VAMC staff on more than one occasion that he had subsequently gone swimming but claims to have been referring to immersing himself in a 55 gallon drum of water. In September 2002, Plaintiff was informed by VAMC staff of the need for him to be seen on a weekly basis for his foot ulcer and advised to keep all scheduled appointments. He declined to comply with both sets of instructions allegedly due to the claim that he was seeking employment at that time.

During the period August 2002 thru May 2003, Plaintiff was instructed by VAMC staff that his blood glucose levels were very high and uncontrolled which staff primarily attributed to his diet, which included at least 5-6 slices of white bread daily, pizza, soda, cheesecake, french fries, ice cream, and other sweets. Plaintiff modified his own shoes which he wore in lieu of the prosthetic shoes provided by VAMC, even though the prosthetic shoes were better at keeping his foot non-weight bearing. In December 2002, Ms. Fitzgerald, the

5

VAMC wound care technician assigned to the Physical Therapy clinic, asked Plaintiff why he did not wear his prosthetic shoes and use the crutches provided for him by VAMC. He recalls explaining to her that "when you work for a Fortune 500 [company] you need to wear certain shoes." On another visit with Ms. Fitzgerald, she again advised that Plaintiff use the prosthetic shoe and crutches provided for him but, although he admits to using those devices on some occasions outside of his home, he did not think that he needed to use the crutches and was looking for employment. Although he kept the crutches provided to him at his home, Plaintiff did not feel that he needed to use them because he was using the "cam walker." Plaintiff appeared at his January 2003 visit with Ms. Fitzgerald using a cane, which he purchased himself, instead of his crutches. He was told by Ms. Fitzgerald that the cane did not provide enough support; however, he continued to use the cane, in lieu of crutches, even after being advised by Ms. Fitzgerald not to do so.

In March 2003, Plaintiff was discharged from treatment in the Physical Therapy clinic because of his noncompliance with the VAMC staff's recommended wound care instructions. Plaintiff was treated by Ms. Fitzgerald more than once and her normal practice was to discuss with him the possibility

6

of amputation if he did not remain non-weight bearing and maintain a strict dietary regimen. In March 2003, Plaintiff discussed with Dr. Cullen of the VAMC an x-ray taken of his right foot which showed no bone infection. In May 2003, VAMC staff was concerned that Plaintiff was not maintaining good control of his blood glucose level which on that date exceeded 200 mg/dL.

At some point during the period September 5, 2002 to December 31, 2002, Plaintiff contacted VAMC to obtain more Cipro because his supply had run out and the ulcer was exhibiting a foul order. He was advised to report to the emergency room but cannot recall whether or not he did so. From August 20-23, 2003, Plaintiff experienced symptoms which included vomiting, fatigue, and extreme thirst for which he consumed large amounts of Gatorade. On August 22, 2003 Plaintiff reported to Crawford Long Hospital for treatment of his symptoms. Plaintiff testified that he was informed by the Crawford Long staff that he was suffering from infection and needed to undergo amputation.

On August 23, 2003, some of Plaintiff's right toes were amputated and his right leg was amputated below the knee on the following day. Plaintiff's admission to Crawford Long in August 2003 lasted six (6) days, after which time he was admitted to VAMC for follow-up care. Plaintiff underwent

7

amputation of his left leg in 2007. In 2008, Plaintiff underwent amputation of his left index and ring fingers and his right middle finger due to peripheral vascular disease related to his diabetes. Plaintiff was diagnosed with end stage renal disease in 2003, for which he receives dialysis, underwent an amputation of the left lower leg in February 2007, and amputations of the ends of several fingers in 2008, as a result of peripheral arterial disease.

On June 13, 2007, Plaintiff brought this action against the United States Government pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., alleging that he suffered injuries as a result of negligent medical treatment provided to him at the Veterans Administration Medical Center between August 2002 and August 2003. On June 27, 2007, an Order [3] was entered granting Plaintiff leave to proceed *in forma pauperis*. The Court conducted a frivolity review pursuant to 28 U.S.C. § 1915(e)(2), and on July 3, 2007, entered an Order [4] finding that Plaintiff had failed to allege that he had filed a claim with a federal agency for bringing this action and dismissing the case. On July 20, 2007, Plaintiff filed a Motion for Reconsideration [6] stating that he had properly filed a claim with the Department of Veterans Affairs. On September 17, 2007, the Court entered an Order [7] vacating its June 29, 2007 Order and permitting Plaintiff to proceed with his claim. Plaintiff was also

8

granted leave to amend his Complaint. On October 5, 2007, Plaintiff filed an Amended Complaint [8]. The amended complaint alleges an FTCA claim based on medical malpractice associated with the amputation of his right leg. On May 27, 2008, Defendant filed a Motion for Dismissal or, Alternatively, Summary Judgment [19], which is presently before the Court for consideration.

## Discussion

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the

9

burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (stating that once the moving party has met its burden under Rule 56(c), the nonmoving party "must

10

AO 72A
(Rev.8/82)

do more than simply show there is some metaphysical doubt as to the material facts").

Even if a motion for summary judgment is unopposed, the movant must nevertheless show it is entitled to judgment on the merits, based on evidentiary materials in the record. See Dunlap v. Transam Occidental Life Ins. Co., 858 F. 2d 629, 632 (11th Cir. 1988) (district court did not err in treating motion for summary judgment as unopposed where it considered the merits of the motion). The district court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted," but it must at least review all those submitted in support of the summary judgment motion. United States v. 5800 S.W. 74th Ave., 363 F. 3d 1099, 1101 (11th Cir. 2004). A district court's order granting an unopposed motion for summary judgment must indicate that the merits were considered. Id. at 1102.

Plaintiff brings this action pursuant to the FTCA alleging negligent medical care at VAMC. In its Motion for Summary Judgment, Defendant asserts that Plaintiff has offered no evidence that VAMC personnel breached the standard of care. Second, Defendant asserts that Plaintiff failed to show that his medical condition would have improved with different treatment. Finally, Defendant asserts that Plaintiff's noncompliance with instructions from his

11

health care providers amounts to contributory or comparative negligence that bars recovery by him.

A plaintiff alleging medical negligence must establish three (3) essential elements: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure was the proximate cause of the injury sustained. Negligence alone is insufficient to sustain recovery. It must be proven that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient." Goggin v. Goldman, 209 Ga. App. 251, 252, 433 S.E. 2d 85, 87 (1993) (internal citations and quotations omitted).

The standard of care required of a physician or surgeon "is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally." Johnson v. Riverdale Anesthesia Associates, P.C., 275 Ga. 240, 241, 563 S.E. 2d 431, 433 (2002). "Any injuries resulting from a want of such care and skill shall be a tort for which a recovery may be had." O.C.G.A. § 51-1-27.

"There is a presumption in a medical malpractice cases that the physician performed in an ordinarily, skillful manner, so that the burden is upon the

plaintiff to show a want of care or skill.  Therefore, a plaintiff is usually required to offer expert medical testimony to the effect that the Defendant-Doctor failed to exercise that degree of care and skill which would ordinarily have been employed by the medical profession generally *under the circumstances*." Bowling v. Foster, 254 Ga. App. 374, 377, 562 S.E. 2d 776, 779 (2002) (internal citations and quotations omitted; emphasis in original). "[T]here can be no recovery for medical negligence involving an injury to the patient where there is no showing to any reasonable degree of medical certainty that the injury could have been avoided." Id., 254 Ga. App. at 378, 562 S.E. 2d at 780.

Plaintiff has produced no expert testimony that the VAMC personnel breached the standard of care.  Further, Plaintiff has offered no evidence that the amputation of Plaintiff's leg would not have been necessary even if another treatment plan had been used.  Thus, the Court finds that Plaintiff has failed to establish any of the three essential elements of a medical negligence claim.

Moreover, Defendant has offered substantial evidence of Plaintiff's noncompliance with the treatment plan devised by the VAMC staff.  "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover.  In other

13

cases, the defendant is not relieved, although the plaintiff may have in some way contributed to the injury sustained." O.C.G.A. § 51-11-7. While it is not clear that Plaintiff's leg could have been saved if he had followed the treatment plan, the evidence does establish that Plaintiff's noncompliance reduced the likelihood of success of the treatment plan.

"[A]s a general proposition, issues of negligence, contributory negligence and lack of ordinary care for one's own safety are not susceptible of summary adjudication but should be resolved by trial in the ordinary manner. The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable." Robinson v. Kroger Co., 268 Ga. 735, 739, 493 S.E. 2d 403, 408 (1997) (internal citations and quotations omitted).

The evidence in the present record is plain and undisputable that VAMC personnel did not violate the standard of care. Also, there is no evidence that any other treatment plan would have caused a different result in Plaintiff's case. Finally, the evidence plainly establishes that Plaintiff's negligence in failing to comply with his treatment plan exceeds the negligence, if any, by VAMC personnel.

14

## Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment [19-2] is **GRANTED**. In light of the granting of the Motion for Summary Judgment, Defendant's Motion to Dismiss [19-1] is **DENIED**, **AS MOOT**.

**SO ORDERED**, this  2nd  day of October, 2008.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)